Bessie A. KAUFFMAN, et al., Plaintiffs,

v.

**PUERTO RICO TELEPHONE CO., et al., Defendants.**

**Civ. No. 85–701 HL.**

United States District Court,
D. Puerto Rico.

Jan. 23, 1987.

José Ramón Pérez Hernández, Héctor Urgell, Pedro Miranda, Old San Juan, P.R., for plaintiffs.

Fiddler, González & Rodríguez, San Juan, P.R., for defendant P.R. Telephone Co.

Saldaña, Rey, Morán & Alvarado, Santurce, P.R., for defendants Lausell, Navarro, Molina & Ramos.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiffs, eleven former employees of the Puerto Rico Telephone Co. ("PRTC"), filed this action under 42 U.S.C. sect. 1983 against their former employer PRTC; the Puerto Rico Telephone Authority ("PRTA"); Miguel Lausell, Executive Director of PRTA and President of PRTC[1]; Rafael A. Navarro, Vice President in charge of employee relations at PRTC; Elsa Molina, Personnel Director of PRTC, and Armando Ramos, Recruitment Manager of PRTC. Plaintiffs claim to have been discharged from their jobs because of their political affiliation in violation of the First Amendment and without notice or a pretermination hearing in violation of the Due Process Clause.

Before the Court are cross-motions for Summary Judgment. Plaintiffs base their claim for summary judgment on the undisputed fact that they were discharged by defendants without notice or hearing. Defendants counter that judgment should be granted in their favor because all plaintiffs, with the exception of Annie Ceide had been illegally hired and, as a result, had no property interest in their jobs and no right to due process. Concerning the claim of Annie Ceide, defendants maintain she has no cause of action for violation of due process because she was given notice of her termination and afforded an opportunity to be heard on the charges against her prior to termination. Defendants also assert that plaintiffs have failed to support a First

Ramón García García, Hato Rey, P.R., for plaintiff Annie Ceide.

---

1. Miguel Lausell has been replaced by Pedro Galarza. When an official is replaced pending resolution of the action, the named official is automatically substituted by the successor in office for the purpose of injunctive relief. Fed. R.Civ.P. 25(d)(1); *María Santiago v. CRUV,* 554 F.2d 1210 (1st Cir.1977).

Amendment claim for political discrimination.

Defendants' Motion for Summary Judgment against all plaintiffs except Annie Ceide is GRANTED. Annie Ceide's Motion for Summary Judgment on the claim to due process is GRANTED. Motions for Summary Judgment by defendants and Ceide on her First Amendment claim are DENIED.

FACTS

Plaintiffs worked for PRTC as "career" employees with PRTC until they were dismissed or, in the case of Annie Ceide, permanently suspended, from their jobs on February 22, 1985. Each plaintiff claims to be an active member of the New Progressive Party ("NPP") of Puerto Rico. Defendants are known to be members of the rival political party, the Popular Democratic Party ("PDP").

Following eight years of NPP administration, the PPD won the November, 1984 general election for governor, and took office in January, 1985. Shortly after the change in administration defendant, Miguel Lausell, was appointed Executive Director of PRTA and President of the PRTC. As President and Executive Director, Lausell appointed defendants, Rafael Navarro, Elsa Molina and Armando Ríos to the positions of Vice President in charge of Employee Relations, Personnel Director, and Recruitment Manager respectively.

PRTA is a public corporation created by Law No. 25 of May 6, 1974, 27 L.P.R.A. sect. 401 et seq. PRTC is a private corporation organized under the laws of the state of Delaware. PRTA is the sole shareholder of PRTC. The Governor of Puerto Rico appoints the PRTA governing board and, pursuant to the law, the PRTA Executive Director who also serves as President of PRTC. 27 L.P.R.A. sects. 404, 405.

From its creation in 1974 until 1982 PRTC operated its employment matters as a private corporation without complying with the personnel laws of Puerto Rico. In 1982 the Puerto Rico Supreme Court held that PRTC was a "public-private" corporation operating as an instrumentality of the government and must comply with the laws of Puerto Rico. *Torres–Ponce v. Jimenez*, 113 D.P.R. 58 (1982). The court ordered PRTC to adopt personnel regulations in compliance with the merit principles and regulations of Puerto Rico's Public Service Personnel Act of 1975, 3 L.P.R.A. sect. 1301 et seq. ("the Personnel Act"). *Id.*

The Personnel Act was passed in 1975 in response to a deep dissatisfaction with the quality and efficiency of government employees. *See Reyes Coreano v. Puerto Rico Ports Authority*, 110 D.P.R. 40 (1980). The objective of the Act was to install a government-wide merit system aimed at attracting the most qualified employees to public service, attaining a public administration governed by "uniformity, equity, and justice," and maintaining "harmony and satisfaction" in the work place and "continuity and regularity" of public services. 3 L.P.R.A. sect. 1321.

Following the order of the Puerto Rico Supreme Court, PRTC issued Personnel Regulations for Managerial (non-union) Employees ("the Regulations"), effective April, 1983, consistent with the merit principles and objectives of the Personnel Act. The Regulations govern all aspects of recruitment, hiring, firing, and training of PRTC employees. The salient features of the Regulation's provisions governing recruitment and hiring are the requirements to give priority to internal employees and to publish the job openings publicly in order to attract the most qualified candidates.[2]

Except for Annie Ceide, all plaintiffs were recruited and hired to "career" positions with PRTC subsequent to the April, 1983 effective date of the Regulations.[3]

---

2. See Appendix I.

3.

| Plaintiff | Date Hired | Position |
|---|---|---|
| Bessie A. Kauffman | July 5, 1983 | Employment Assistant Recruitment Division |
| Ivonne B. Rivera | October 24, 1983 | Administrative Office Clerk |

By letter dated February 22, 1985, signed by Rafael Navarro and hand delivered by Armando Ramos and Elsie Molina, these plaintiffs were notified of dismissal. The letter gave the following explanation for their discharge:

After conducting an investigation of the files and records, it has been determined that your recruitment was performed in violation of the PRTC Regulation for Managerial Personnel and the merit principle, this violation renders your appointment illegal.

An investigation of the recruitment process was undertaken by the Employment Relations Division after Rafael Navarro became aware that several complaints alleging illegal recruitment and hiring had been filed with an administrative tribunal handling such matters and that a group of PRTC employees had been formed with the purpose of protesting these violations. The investigation revealed that fifty-two employees, including plaintiffs, had been hired in violation of the Regulations. It was found that plaintiffs had all been recruited from outside PRTC without giving internal employees first consideration for the job vacancies and without ever publishing the job openings, either internally or externally.

Plaintiff Annie Ceide was hired as PRTC Recruitment Manager on January 17, 1983, prior to the April, 1983 effective date of the Regulations. She held this position until January 21, 1985 when she was replaced by Armando Ramos and assigned to another position. On March 2, 1985, she received a letter suspending her from employment without pay effective February 22, 1985.

The letter explained that she was being suspended pending an investigation of her involvement as Recruitment Manager of recruitment and hiring in violation of the Regulations.

Following her suspension on April 4, 1985 Ms. Ceide was sent a letter from Mr. Navarro requesting her presence on April 11 for an interview regarding the charges against her of illegal recruitment and hiring. She failed to appear at the meeting. On April 26 she was sent a second letter requesting her presence at a May 2 meeting. Again she failed to appear. Ms. Ceide was officially terminated from employment on May 20, 1985.

On cross-motions for summary judgment the court must decide whether either party is entitled to judgment on the claim presented, in this case plaintiff's claim for violation of the Due Process Clause and the First Amendment. Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

PLAINTIFFS HIRED AFTER THE EFFECTIVE DATE OF THE PRTC PERSONNEL REGULATIONS HAD NO PROPERTY INTEREST IN THEIR JOBS AND WERE NOT ENTITLED TO DUE PROCESS.

The Due Process Clause of the Fourteenth Amendment guarantees public em-

| Plaintiff | Date Hired | Position |
| --- | --- | --- |
| Diana Doris Rodríguez | December 5, 1983 | Employment Assistant Recruitment Division |
| Francisco Javier Acevedo | January 16, 1984 | Interviewer I Recruitment Division |
| Olga de Jesús Rodríguez | July 16, 1984 | Employment Assistant Recruitment Division |
| Ilsa Ramírez García | January 30, 1984 | Employment Assistant Recruitment Division |
| Angela Meléndez Orlang | July 2, 1984 | Employment Assistant Recruitment Division |
| María Esther Torres | August 13, 1984 | Administrative Office Clerk |
| Cecilia Zamora Lugo | July 5, 1983 | Secretary I Recruitment Division |
| Edwin Ralat Avilés | Sept. 15, 1984 | Government Affairs Coordinator |

ployees with a property interest in continued employment the right to an informal hearing *prior* to being discharged. *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). A property interest is created by "existing rules or understandings that stem from an independent source such as state law." The process due prior to taking the property is, however, a matter of constitutional or federal law. *Id.* at 1492–1493.

■ The positions held by plaintiffs in this case—Employment Assistant, Office Clerk or Interviewer I—are "career" positions as defined by Puerto Rico's Personnel Act, 3 L.P.R.A. sect. 1349.[4] "Career" employees may be removed only upon a showing of "just cause," and after being given notice and hearing. 3 L.P.R.A. sect. 1336(4).[5] Employees with similar statutory protection have been held to have an expectancy in continued employment and a property interest in the employment position. *See Loudermill, supra,* at 1491; *Kerkado v. Aponte–Roque,* 64 F.Supp. 1326 (D.P.R.1986).

■ Whether plaintiffs here had a property interest in continued employment is dependent upon the legality of their appointments. The Supreme Court of Puerto Rico has made it clear that appointment of a public employee in violation of an agency regulation or provision of the Personnel Act is null and void, and carries none of the due process protection normally associated with a "career" appointment. *Liliana Laboy v. Ela,* 84 JTS 23 (1984); *Colon v. Alcalde Municipio Ceiba,* 112 D.P.R. 748 (1982); *Guerra v. Servicios Sociales,* 113 D.P.R. 50 (1982); *Ortiz v. Alcalde De Aguadilla,* 107 D.P.R. 819 (1978). In *Gu-*

*erra,* the Supreme Court stated unequivocably:

> The merit system [of Puerto Rico's Public Service Personnel Act] is an integrated system which covers the discharge of the employee and also his or her recruitment, therefore if the employee entered the public service without complying with the requirements of the merit system he or she cannot later claim protection of the system if discharged, except if the discharge is because of political discrimination.

*Guerra v. Servicios Sociales, supra,* at 53.[6]

In other words, public employees hired illegally to a "career" position have no property interest or expectation of continued employment entitling them to due process prior to termination. Instead, they have the same rights as a "trust" (de confianza) employee who may be terminated at any time for any reason provided the reason for discharge does not contravene the Constitution; for instance, a discharge based on political discrimination in violation of the First Amendment. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

■ It is undisputed that plaintiffs were hired from outside PRTC without affording internal employees first consideration and without advertising the position openings in any manner. Defendants claim plaintiffs' appointments violated section 8.4(1) of the Regulation requiring PRTC employees to be given priority for job vacancies and section 8.4(1) and (3) requiring all vacancies to be published in order to attract the qualified candidates. N. 2 *infra.*

---

**4.** 3 L.P.R.A. sect. 1349 provides:
There shall be two categories of employees: career employees and confidential employees.

**5.** The Puerto Rico Personnel Act, 13 L.P.R.A. sect. 1336(4) states:
(4) The appointing authority may remove any career employee for good cause and upon previous perferment of charges, in writing and upon prior holding of an administrative hearing if the employee so requests.

**6.** This conclusion, that actions of a government agency which fail to comply with the law or self imposed regulations are null and void, is supported by decisions of the United States Supreme Court and federal circuit courts which have held that federal agencies must firmly adhere to agency rules, regulations or procedures. *See Accardi v. Schaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Mass Fair Share v. Law Enforcement Assistance,* 758 F.2d 708 (D.C.Cir.1985) (cases cited therein).

In *Laboy v. Ela, supra,* the Puerto Rico Supreme Court expressed approval for a similar personnel regulation of another Commonwealth agency, the State Insurance Fund. The Court found the regulation, which gave preferential treatment to internal employees, promoted the merit principles outlined in the Personnel Act by encouraging consistency and harmony in the workplace and the retention of experienced employees. *Id.* It was held that Lilian Laboy's appointment as an outside candidate without first considering qualified internal agency employees violated the State Insurance Fund's personnel regulations and as a result, the appointment was null and void. *Id.*

In an attempt to refute defendants' claim to summary judgment, plaintiffs argue that a question of fact exists whether they were hired illegally. Their argument is based on an interpretation of the language of the Regulations. They claim the language of sect. 8.4(2)—"should there not exist proper internal candidates to cover the vacancy ... *or* when the Company deems that it is convenient and practical, it shall proceed to external recruitment" (emphasis plaintiffs'), n. 2, *infra*—modifies sect. 8.4(1)'s requirement to afford internal employees first consideration for job openings and authorizes recruitment of outside candidates when convenient. They interpret the language of sect. 8.4(3) as allowing publication of job openings in any manner whatsoever. The section states that all of the following are adequate means of communication: "bulletin boards, publications, daily newspapers, professional magazines, private or public employment agencies *and other means that may reach interested parties*" (emphasis plaintiffs').

In fact, plaintiffs claim does not raise a question of fact about the legality of their appointments—but a legal question concerning the proper interpretation of the Regulation, sects. 8.4(2) and (3).[7] A legal issue is appropriately decided by the court

on a motion for summary judgment. We find plaintiffs' interpretation untenable.

If the interpretation proffered by plaintiffs were correct, the Regulations would be completely without effect. PRTC would have the right to recruit and hire from within when it chose, but, when it found it more convenient, by the Company's own standards, it could recruit from outside without ever considering internal candidates. According to plaintiffs' interpretation of the publication requirement, notification of job openings would be proper no matter how it was done. Public notice would be acceptable, but so also would word-of-mouth.

Pursuant to mandate of the Puerto Rico Supreme Court, PRTC was to issue the personnel regulations in compliance with the merit principle of Puerto Rico's Personnel Act—to promote consistency and harmony in the workplace and to attract the most qualified candidates. We find the proper interpretation of the PRTC Regulations to be one which is consistent with and promotes these merit principles and objectives.

The plain language of the Regulation sect. 8.4(1) requires PRTC to "consider *first* internal employees of the company." Then, if no "suitable" internal candidate exists, the company may, under 8.4(2), when it deems it necessary ("for convenience"), recruit and hire externally. This interpretation of the recruitment and hiring provisions of the Regulations is appropriate because it is consistent with the merit objectives of the Personnel Act—to promote consistency and harmony in the workplace.

■ Section 8.4(3) requires employment opportunities to be communicated by the "most proper means" to attract "capable persons." Several suggestions are given as "adequate means" of communication: "bulletin boards, publications daily newspapers ... and other means that may reach persons who may be interested." We do

---

7. Given different circumstances, it is possible that a question of fact would exist as to the legality of an appointment to defeat a motion for summary judgment. This case does not present such a factual situation. Another

factor, not present herein, would entail the timeliness of the employer's action in relying on the validity of the appointment as ground for dismissal.

not interpret this last "catch-all" suggestion as a carte blanche to communicate job openings in any manner. The list of suggestions does not specifically mention word-of-mouth and we do not find such means of communication to be acceptable to attract "capable" candidates or to be consistent with the objectives of the merit system.

All plaintiffs, except Annie Ceide, were hired subsequent to the effective date of the Regulations. We find them to have been hired in violation of Sect. 8.4(1) and 8.4(3) making their appointments illegal and null and void. We also note that plaintiffs were made aware of the illegality of their appointments by the group of PRTC employees formed to protest the violation of the Regulations and, therefore, they could not claim to have had an expectation in continued employment.

Even if we were to accept plaintiffs' interpretation of the Regulation, there is no evidence that it was more convenient or practical to recruit outside candidates for the positions at issue. Plaintiffs were hired as "employment assistant," "administrative assistant," "office clerk," "Secretary II," or "Interviewer I." The job requirements for these positions are minimal; they require respectively a high school diploma and one year clerical experience; high school diploma and a secretarial course; high school diploma and three years experience as secretary at the executive level; and two years of college in business administration or liberal arts. It is hard to believe that no internal employees met these requirements and that it would not have been more convenient to promote employees from within.

Because plaintiffs were hired in violation of the PRTC personnel regulation, they have no property interest in their employment and no right to due process prior to termination.

■ Though plaintiffs are not entitled to the due process protection generally afforded career employees, they do have a right, as do all employees, to be free from employment termination for an unconstitutional reason, such as political discrimination. Plaintiffs claim the real reason for their dismissal is their political affiliation with the NPP. Defendants claim plaintiffs were terminated because they were illegally hired and that political affiliation was not a consideration.

In situations such as this one where dismissal is based on a "mixed motive" the court must expressly find that "but for" the constitutionally protected conduct plaintiffs would not have been discharged. *Mt. Healthy City School District Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed. 2d 471 (1974); *Givhan v. Western Line Consolidated School Dist.,* 439 U.S. 410, 417, 99 S.Ct. 693, 697, 58 L.Ed.2d 419 (1979). Plaintiffs have failed to meet this burden.

In support of their claim to political discrimination plaintiffs merely state that the practice of political discrimination by the PPD administration is well known. Such a general statement is completely inadequate to support their claim. Once the party moving for summary judgment has come forward with a valid argument the opposing party may not rest on mere conclusory statements but must put forth specific facts to refute the argument. Fed.R.Civ.P. 56(c); *see Celotex, supra,* 106 S.Ct. at 2348. Here, defendant claims plaintiffs were discharged because they had been hired in violation of PRTC Regulations. Plaintiffs have come forward with nothing more than conclusory statements that the real reason for discharge was political affiliation. No specific evidence of any kind was proffered to rebut defendants' claim.

We find, therefore, that plaintiffs have failed to present sufficient evidence to raise a question of fact that "but for" political affiliation they would not have been dismissed from their positions. Defendants' motion for summary judgment against all plaintiffs, except Annie Ceide, is GRANTED.

PLAINTIFF ANNIE CEIDE'S RIGHT TO DUE PROCESS WAS VIOLATED AND THERE EXISTS A QUESTION OF FACT WHETHER SHE WAS TERMINATED IN VIOLATION OF THE FIRST AMENDMENT.

Annie Ceide was hired to a "career" position, Recruitment Manager for PRTC, on

January 17, 1983, almost four months before the April 4, 1983 effective date of the Regulations. On February 22, 1985 Annie Ceide was indefinitely suspended from employment without pay. Following her suspension, plaintiff was sent two letters in April requesting her presence at two separate meetings to discuss the charges against her. She failed to appear at either meeting. On May 20, 1985 she was permanently terminated from employment with PRTC.

The issue presented by Anne Ceide's claim is not whether she had a property interest in her job and a due process right to notice and hearing prior to termination. As a "career" employee hired prior to the enactment of the Regulations Annie Ceide's appointment was legal and valid giving her a property interest in her job and the right to due process. *See Loudermill, supra,* 105 S.Ct. at 1987 (1985). The issue here is instead whether the suspension on February 22, 1985 constituted a deprivation of property entitling Annie Ceide to due process protection.

The Supreme Court has characterized a deprivation of property entitled to due process as any interruption in the flow of the right to continued benefits. *See Atkins v. Parker,* 472 U.S. 115, 127–29, and n. 31, 105 S.Ct. 2520, 2529 and n. 31, 86 L.Ed.2d 81 (1985); *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 786–787, 100 S.Ct. 2469, 2475–2476, 65 L.Ed.2d 506 (1980); *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 20, 98 S.Ct. 1554, 1566, 56 L.Ed.2d 30 (1978); *Goldberg v. Kelly,* 397 U.S. 254, 266, 90 S.Ct. 1011, 1019, 25 L.Ed.2d 287 (1970). Suspension from a job in which the employee had a property interest has been held to be a deprivation of property entitled to due process protection. *Confederation of Police v. City of Chicago,* 547 F.2d 375 (7th Cir. 1977); *D'Acquisto v. Washington,* 640 F.Supp. 594 (N.D.Ill.1986).

Plaintiff here was suspended without pay effective February 22, 1985 and without being given a prior opportunity to contest the charges against her. The suspension constituted a deprivation of her property interest in continued employment.

Though plaintiff was deprived of property, defendants claim they incurred no violation of due process because the *Loudermill* decision requiring a pretermination hearing was not yet issued at the time of her suspension. *Loudermill* was decided on March 19, 1985 and plaintiff was suspended on March 2, 1985 effective February 22, 1985. Defendants claim the decision should not be applied retroactively.

In deciding the issue of retroactive application of a civil decision we begin with the principle, as the First Circuit did in *Graves v. Smith's Transfer Corp.,* 736 F.2d 819, 820 (1st Cir.1984), "that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." Furthermore, "the retroactive applicability of judicial decisions of the federal court is the rule, not the exception." *Simpson v. Director Office of Workers' Compensation Programs, United States Department of Labor,* 681 F.2d 81 (1st Cir.1982).

In *Gurish v. McFaul,* 801 F.2d 225 (6th Cir.1986), the Sixth Circuit held that *Loudermill* should be given retroactive application. To reach this decision the court followed the law of the circuit "that where, as in *Loudermill,* the Court applies the announced rule to the case before it and makes no statement as to whether it intends the rule to have retroactive or only prospective effect ..., it will be presumed that the Court intends that the rule be given retroactive application." *Id.* at 227 [citing *Smith v. General Motors Corp.,* 747 F.2d 372 (6th Cir.1984)]; *see also, Welyczko v. U.S. Air, Inc.,* 733 F.2d 239, 241 (2nd Cir.1986).

It was unnecessary in *Gurish* to apply the traditional three part test set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–107, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1976) to determine the retroactivity of a decision in a civil case. The three part test requires the court to ask: 1) whether the decision represents a "clear break"

with past law; 2) whether retroactive application would further or retard operation of the new rule; and 3) whether retroactive application could "produce substantial inequitable results." *Chevron Oil, supra* 92 S.Ct. at 355.

Even applying this test we arrive at the same result as the Sixth Circuit in *Gurish v. Loudermill* did not establish a new principle of law and in no way represent a "clear break" with past decisions. In fact, the Court set forth the line of prior decisions from which it should have been concluded that Due Process Clause requires a pretermination hearing when the property interest at stake was a matter of employment. *Loudermill, supra*, 105 S.Ct. at 1493. In addition, the retroactive application would further the purpose of the decision to protect an individual from being wrongfully deprived of his livelihood without being given an opportunity to contest the charges against him. Finally, weighing the equities here no injustice will be committed by applying the rule retroactively.

In conclusion, we find that *Loudermill* applies to this case and that defendants violated Annie Ceide's due process rights by suspending her without pay and without a hearing prior to suspension. Defendants' attempt to rectify the violation by requesting her attendance at a hearing subsequent to the suspension has no effect. As the Supreme Court taught in *Carey v. Piphus,* 435 U.S. 247, 258, 267, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978), "the right to procedural due process is 'absolute' in the sense that it does not depend on the merits of the claimant's substantive assertions, and because of the importance to organized society." Hence, denial of procedural due process is actionable for nominal damages without proof of actual injury.

Like the other plaintiffs, Annie Ceide claims that the real reason for her discharge was her affiliation with the NPP. As explained earlier the applicable standard in a case of political discrimination where discharge is based on a mixed motive is the test established in *Mt. Healthy, supra*, 429 U.S. 274, 97 S.Ct. 568. Under this test the burden is initially on the plain-

tiff to show that his or her conduct was constitutionally protected and that this conduct was a substantial or motivating factor in the action taken against him or her. *Id.* at 287, 97 S.Ct. at 576; *Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410, 417, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979). If this is proven, the burden shifts to defendant to show by a preponderance of the evidence that the plaintiff would have been discharged in any event. *Id.* In other words, if plaintiff is to recover the trier of fact must expressly find that plaintiff would not have been discharged "but for" the constitutionally protected conduct. *Id.* at 417, 99 S.Ct. at 697; *Cheveras Pacheco v. Rivera Gonzalez,* 809 F.2d 125 (1st Cir.1987).

■ The protected conduct in the present case is plaintiff's membership in the NPP political party. Plaintiff's initial burden is to prove that her political affiliation was a substantial and motivating factor for her dismissal. Because of its subjective nature, motivation of a defendant can rarely be proved with direct evidence—seldom will an employer admit to have violated the Constitution. For this reason circumstantial evidence may be used to show discriminatory motive in a patronage dismissal case. *Gabriel v. Benitez,* 390 F.Supp. 988, 993 (D.P.R.1975), aff'd. *Rivera Morales v. Benitez De Rexach,* 541 F.2d 882 (1st Cir.1976).

■ An inference of political discrimination exists when an individual affiliated with one political party is replaced by a member of the other party currently in power. *see Colon v. Cruv,* 84 JTS 52 (1984); *Navedo v. Mayor De Barceloneta,* 113 D.P.R. 421 (1982); *Baez Cancel v. Mayor of Guaynabo,* 100 D.P.R. 980 (1972). Unlike the other plaintiffs in this case, Annie Ceide presented evidence that she was replaced by a member of the PPD, Arnaldo Ramos. We find this evidence sufficient to suggest that a substantial reason for plaintiff's ultimate termination was her political affiliation.

Though defendant has come forward with evidence of a valid reason for plaintiff's discharge—the violations of the Reg-

ulation committed in recruitment—we cannot find as a matter of law that plaintiff would have been terminated if it were not for her political affiliation. This issue raises a question of fact, whether "but for" political discrimination plaintiff would not have been terminated.

## PRTC IS NOT ENTITLED TO AN ELEVENTH AMENDMENT IMMUNITY

■ Defendant PRTC has motioned to be dismissed as a party defendant on the grounds of an Eleventh Amendment immunity. We find that PRTC, as a public-private corporation is not entitled to the immunity. We adopt the holding and reasoning on this issue of Judge Pérez–Giménez in *Cruz Martinez v. Lausell,* Civ. No. 95-0956, October 1, 1986.

## INJUNCTIVE RELIEF

WHEREFORE, defendants' Motion for Summary Judgment against plaintiffs,

Bessie A. Kauffman

Ivonne B. Rivera

Diana Doris Rodríguez

Francisco Javier Acevedo

Olga de Jesús Rodríguez

Ilsa Ramírez García

Angela Meléndez Orlang

María Esther Torres

Cecilia Zamora Lugo

Edwin Ralat Avilés

is GRANTED. The Clerk of the Court is ordered to enter judgment dismissing the complaint of these plaintiffs.

Annie Ceide's Motion for Summary Judgment on her claim of violation of due process is GRANTED.

The Cross-Motions for Summary Judgment by defendants and Annie Ceide on her First Amendment claim are DENIED. A jury trial on the First Amendment claim only will be held on a date to be set by the Court. Plaintiff's relief for the due process violation will be determined by the Court subsequent to the trial.

IT IS SO ORDERED.

## APPENDIX I

Section 8.4 of the Regulation governing recruitment and hiring, provides:

1. The PRTC shall have as rule when considering the filling of vacancies that arise to consider first the internal employees of the Company following the rules of publication and free competition for all the employees who comply with the requisites, and provided that the internal candidates are suitable to fill the vacancy. The opportunities are published through a personnel requisition which shall contain the following information: position title, minimum requirements, placement level in the salary structure, time limits to file applications, department and work area and any other information indispensable as the type of competition and testing.

2. Should there not exist internal candidates to cover the vacancy or vacancies, or when the Company deems that it is convenient and practical, shall proceed external recruitment.

3. To attract to the Company the most capable persons by means of external recruiting, the opportunities of employment shall be divulged by the most proper means of communication in each case.

Adequate means shall be considered among others, the following: bulletin boards, publications, daily newspapers, professional magazines, private or public employment agencies and other means that may reach persons who may be interested.