Bessie A. KAUFFMAN, et al.,
Plaintiffs, Appellants,

v.

PUERTO RICO TELEPHONE COMPA-
NY, et al., Defendants, Appellees.

No. 87-1503.

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1987.
Decided Feb. 3, 1988.

Pedro Miranda Corrada, San Juan, P.R., with whom Hector Urgell Cuebas was on brief for plaintiffs, appellants.

Manuel Alvarado, Hato Rey, P.R., with whom Zuleika Llovet, San Juan, P.R., Saldana, Rey, Moran & Alvarado, Santurce, P.R., Hector Rivera–Cruz, Secretary of Justice, and Rafael Ortiz–Carrion, Sol. Gen., were on brief for defendants, appellees Lausell, Navarro, Molina and Ramos.

Jay A. Garcia Gregory with whom Emily Arean Diaz and Fiddler, Gonzalez & Rodriguez, San Juan, P.R., were on brief for defendants, appellees Puerto Rico Tele-

phone Authority and Puerto Rico Telephone Co.

Before COFFIN, BOWNES and SELYA, Circuit Judges.

COFFIN, Circuit Judge.

The plaintiffs, ten former employees of the Puerto Rico Telephone Company ("PRTC"), appeal from a summary judgment entered by the United States District Court for the District of Puerto Rico in favor of the defendants, PRTC, the Puerto Rico Telephone Authority ("PRTA"), and certain individual PRTC officials. The plaintiffs claimed that the defendants discharged them because of their affiliations with the New Progressive Party ("NPP"), in violation of the First Amendment, and that the defendants' failure to provide them with notice and hearing prior to dismissal violated their rights to due process. For the reasons set forth herein, we affirm the district court's judgment for defendants.

### I.

The undisputed facts are set forth fully in the opinion of the district court. *Kauffman v. Puerto Rico Telephone Co.*, 674 F.Supp. 952, 954–56 (D.P.R.1987). We summarize them as follows:

PRTA is a public corporation organized and operated pursuant to P.R.Laws Ann. tit. 27, §§ 401–24 (1985). PRTA is the sole shareholder of PRTC, a quasi-public corporation, incorporated under Delaware law. In 1982, the Puerto Rico Supreme Court held that PRTC is an instrumentality of the Government of Puerto Rico and must comply with Puerto Rico's Public Service Personnel Act, P.R.Laws Ann. tit. 3 §§ 1301–1431 (1978 & Supp.1986). *Torres–Ponce v. Jimenez*, 113 P.R.Dec. 58 (1982) (official English translation: No. R–81–161, slip. op. (P.R. June 2, 1982)). As a result, PRTC promulgated "Personnel Regulations for Managerial Employees" ("the regulations"), pursuant to P.R.Laws Ann. tit. 3,

§ 1338.[1] These regulations became effective in April 1983, before the plaintiffs were hired. Section 8.4 of the regulations ("regulation 8.4" or "section 8.4"), governing recruitment and hiring, provides:

1. The PRTC shall have as [a] rule when considering the filling of vacancies that arise to consider first the internal employees of the Company following the rules of publication and free competition for all the employees who comply with the requisites, and provided that the internal candidates are suitable to fill the vacancy. The opportunities are [to be] published through a personnel requisition which shall contain the following information: position title, minimum requirements, placement level in the salary structure, time limits to file applications, department and work area and any other information indispensable [such] as the type of competition and testing.

2. Should there not exist internal candidates to cover the vacancy or vacancies, or when the Company deems that it is convenient and practical, [it] shall proceed [to] external recruitment.

3. To attract to the Company the most capable persons by means of external recruiting, the opportunities of employment shall be divulged by the most proper of means of communication in each case.

Adequate means shall be considered among others, the following: bulletin boards, publications, daily newspapers, professional magazines, private or public employment agencies and other means that may reach persons who may be interested.

The plaintiffs were hired between July 1983 and September 1984 to work in various posts at the PRTC as "career" employees. Section 8.4 of the regulations governed their recruitment and hiring.

Following eight years of NPP administration, the Popular Democratic Party (PDP) won the November 1984 general election and its candidates took office in

---

**1.** Section 1338 requires quasi-public corporations such as PRTC to adopt personnel regulations "embodying the merit principle" covering employees, like the plaintiffs in this case, who are not covered by collective bargaining agreements.

January, 1985. The new Governor then appointed defendant Miguel Lausell as Executive Director of PRTA and President of PRTC. Miguel Lausell, in turn, appointed defendants Rafael Navarro, Armando Ramos, and Elsie Molina to the respective positions of Vice President in charge of Employee Relations, Personnel Director, and Recruitment Manager. These PRTC officers were all members of the PDP.

Shortly thereafter, Rafael Navarro learned of allegations that fifty-two employees, including the plaintiffs, had been hired in violation of the regulations. Other employees at PRTC voiced protests that these fifty-two had been hired from outside the company without the requisite attention given to internal recruitment. Upon investigating the matter, the Employment Relations Division of PRTC learned that the plaintiffs "had all been recruited from outside PRTC without giving internal employees first consideration for the job vacancies and without ever publishing the job openings, either internally or externally." *Kauffman,* at 956.

The plaintiffs and the other forty-two employees were dismissed from their jobs pursuant to letters signed by defendant Rafael Navarro and hand delivered by defendants Armando Ramos and Elsie Molina. The letters all contained identical first paragraphs stating:

> After conducting an investigation of the files and records, it has been determined that your recruitment was performed in violation of the PRTC Regulation for Managerial Personnel and the merit principle, this violation renders your appointment illegal. Therefore, you are permanently terminated from employment with the Company, effective February 22, 1985.[2]

The plaintiffs filed their complaint against the defendants on March 25, 1985, alleging violations of the First, Fifth, and Fourteenth Amendments as well as certain provisions and regulations of the Puerto Rico Personnel Act. They sought reinstatement, damages, and punitive damages from defendants pursuant to 42 U.S.C. § 1983 ("section 1983"). After the parties submitted cross-motions for summary judgment and oppositions thereto, the district court, in an opinion and order dated January 23, 1987, granted summary judgment for the defendants.

## II.

### A. *Standard of Review*

Although in reviewing the propriety of a grant of summary judgment, we examine the record in the light most favorable to the losing side, *e.g., Kennedy v. Josephthal & Co., Inc.,* 814 F.2d 798, 804 (1st Cir. 1987), we observe the Supreme Court's recent pronouncements that to defeat a summary judgment motion, the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those factual issues on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Moody v. Maine Central Railroad Co.,* 823 F.2d 693, 694 (1st Cir.1987). Moreover, "the existence of some alleged factual dispute will not defeat a summary judgment motion; 'the requirement is that there be no *genuine* issue of *material* fact.'"

**2.** The remainder of all the letters read as follows:

> We will appreciate it if you would inform us whether you would like to be considered as a candidate for employment in this position, in the event that the Company determines that it will fill the position, and if a candidate from within the Company is not selected. Should you answer in the affirmative, your name will be considered along with those of candidates from outside the Company who apply for the position, in conformity with the Regulation for Managerial Personnel and the rules of the Company.

> Although, as a result of the illegality of your appointment, you do not have a right to it, the Company hereby grants you the opportunity if you would like to challenge your termination from employment and salary, to make a written request to the office of the President for a hearing before an examiner within ten (10) calendar days.

App. vol. I at 170–187. None of the plaintiffs reapplied for his or her position, nor did any request a hearing to challenge the termination decision.

*Kennedy v. Josephthal & Co., Inc.*, 814 F.2d at 804 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original)); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).[3] Thus, summary judgment is proper when, after adequate time for discovery, the party against whom judgment is sought fails to show sufficient basis for the establishment of an essential element of its case. *Moody*, 823 F.2d at 694 (citing *Celotex*, 106 S.Ct. at 2552–53). We assess the plaintiffs' arguments according to these principles.

## B. *The First Amendment Claim*

In their cross-motions for summary judgment, the defendants claimed that the plaintiffs were terminated because they were hired in violation of section 8.4 of the regulations. The plaintiffs alleged, on the other hand, that they would not have been fired but for their affiliations with the NPP. The district court held that the plaintiffs had failed to generate a genuine issue of material fact regarding their claim that their discharges were politically motivated. We agree.

In order to establish a *prima facie* section 1983 claim that their terminations constituted patronage dismissals violative of their First Amendment rights under *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the plaintiffs would have had to prove, at trial, that affiliation with the NPP was the substantial or motivating factor underlying their dismissals. *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Kercado–Melendez v. Aponte–Rogue*, 829 F.2d 255, 264 (1st Cir. 1987); *Rosaly v. Ignacio*, 593 F.2d 145,

148–49 (1st Cir.1979).[4] Thus, to survive defendants' motion for summary judgment, the plaintiffs were required to show the existence of a factual dispute on this issue. *See Celotex*, 106 S.Ct. at 2552–53. The district court concluded that the plaintiffs' political discrimination claims were based upon "mere conclusory statements" that their firings were politically motivated and that the record was lacking any specific evidence "to raise a question of fact that 'but for' political affiliation they would not have been dismissed." *Kauffman*, at 959.

The plaintiffs claim that the district court erred in failing to give due weight to sworn allegations in their complaint and to "detailed statements of facts" in the nature of affidavits attached to their summary judgment motion. We have carefully reviewed the record and have found only the following general and unsupported allegations: that the defendants were all members of the PDP and the plaintiffs members of the NPP; that the plaintiffs were dismissed almost immediately after the PDP party members were appointed to manage PRTC; that PDP employees similarly situated to the plaintiffs were not fired. Under the standard set forth in *Celotex* and *Anderson*, they are insufficient to generate a *genuine* issue of *material* fact.

The closest the plaintiffs come to meeting that standard is the last assertion: that other employees, who like themselves, were hired in violation of section 8.4 of the regulations, but are members of the PDP rather than the NPP, were not dismissed. After more than sufficient time to discover specific information, such as the names of these individuals and their positions at PRTC, however, the plaintiffs failed to provide the district court with information that would suggest that such an assertion had any factual support.[5] This is precisely the

---

3. Rule 56(c) of the Federal Rules of Civil Procedure provides that district courts shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

4. Because this case turns on the plaintiffs' threshold showing of political motivation, we need not analyze the propriety of summary judgment on the question of whether they would have been fired "but for" their political affiliation.

5. The plaintiffs argue that the sworn statements in their complaint and affidavits constitute sufficient grounds to generate a factual dispute

type of case envisioned by *Celotex* and *Anderson*, which provide that summary judgment should be entered against a party bearing the burden of proof on an issue at trial who fails to establish that there exists a genuine and material factual dispute about that issue. Since the plaintiffs failed to allege specific facts that would support their claim of political discrimination, the defendants were entitled to summary judgment on that claim.

## C. *Due Process*

It is well-established that the Due Process Clause of the Fourteenth Amendment guarantees public employees who have a property interest in continued employment the right to at least an informal hearing before they are discharged. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972); *Kercado–Melendez v. Aponte–Roque*, 829 F.2d at 262. Such property rights are not created by the constitution, however, but by "existing rules or understandings that stem from an independent source such as state law." *Loudermill*, 470 U.S. at 538, 105 S.Ct. at 1491 (quotations and citation omitted).

■ It is not disputed that the positions held by the plaintiffs were "career" or tenured jobs and that Puerto Rico law gives employees with such status "property" rights in their continued employment. *Kercado–Melendez v. Aponte–Roque*, 829 F.2d at 262. *See* P.R.Laws Ann. tit. 3, § 1336(4) (1978). Such employees can only be fired for good cause. *Id.* The district court concluded, however, that under Puer-

to Rico law, public employees hired for career positions in violation of the Puerto Rico Personnel Act, or agency regulations promulgated thereunder, may not claim property rights to continued expectations of employment because their career appointments are null and void *ab initio*. It concluded that because these plaintiffs were hired in violation of section 8.4 of the regulations, they could claim no property interests in their employment and were, therefore, not entitled to pre-termination hearings.

The plaintiffs argue that because they were hired as career employees and worked under such status for some time, they developed a legitimate expectation of permanent employment that could not be rendered null and void through a mistake in the recruiting process. In addition, while not disputing that they were hired externally, they disagree with the district court's construction of regulation 8.4. They suggest that this regulation, under a reasonable, alternative interpretation, would condone the manner in which they were recruited and hired. We disagree on both points.

■ We believe that the district court correctly concluded that under Puerto Rico law any property right associated with a career position is rendered null and void if a violation of the Personnel Act attends the filling of such a position. While the law is not absolutely clear in this regard, "we are reluctant to interfere with a reasonable construction of state law made by a district judge, sitting in a state who is familiar with that state's law and practices." *Rose v. Nashua Board of Education*, 679 F.2d 279, 281 (1st Cir.1982).[6]

concerning the defendants' political motivations because they provide the groundwork for proof of that motivation by circumstantial evidence. We recognize that a *prima facie* case of political discrimination can be built on circumstantial evidence of constitutionally suspect motivations for employee dismissals. *See, e.g., Kercado–Melendez v. Aponte–Roque*, 829 F.2d at 264. In calling for more specific factual allegations to support the plaintiffs' claim under the *Celotex/Anderson* standard, however, we do not reject the plaintiffs' contention. Rather, for any substantive claim, whether built upon circum-

stantial or direct evidence, the party against whom summary judgment is sought must generate the specific facts necessary to take the asserted claim out of the realm of speculative, general allegations. The plaintiffs have failed to do that in this case.

**6.** This is particularly so with regard to the case law of Puerto Rico because the district court there has greater access to and ability to interpret that law in its original language than we do. *See Roure v. Hernandez Colon*, 824 F.2d

As the district court pointed out, regulation 8.4 was promulgated in furtherance of the underlying objectives of the Personnel Act: the maintenance of "a government-wide merit system aimed at attracting the most qualified employees to public service, attaining a public administration governed by 'uniformity, equity, and justice,' and maintaining 'harmony and satisfaction' in the work place and 'continuity and regularity' of public services." *Kauffman,* at 955 (quoting P.R.Laws Ann. tit. 3, § 1321). *See also Torres–Ponce v. Jimenez,* 113 P.R.Dec. 58 (1982) (official English translation: No. R–81–161, slip. op. (P.R. June 2, 1982)) (PRTC must comply with the Personnel Act). In *Colon v. Mayor of Municipality of Ceiba,* 112 D.P.R. 740, 12 Puerto Rico Supreme Court Official Translations 934 (1982), a dismissed trust employee contended he should have been entitled to a pre-termination hearing because he really should have been classified as a career employee. The defendant municipality argued that he could not properly be classified as a "career" employee because he was not hired in compliance with competition and probationary requirements of the municipality's by-laws and the Personnel Act. Assuming that the employee should have been classified as a career employee, the Puerto Rico Supreme Court nevertheless concluded that he was not entitled to a property interest in his job. The court explained:

> [A]cts executed contrary to the provisions of law are void except when the law preserves their validity.... Especially when it constitutes an assault on the public order values contained in the Personnel Act. The protection of the career position cannot be extended to he who obtained the position on the basis of standards foreign to that category.

> .   .   .   .   .

> Being a result of an act contrary to law, such a condition is void.

*Id.* at 940; *see Franco v. Municipality of Ceiba,* 112 P.R.Dec. 260 (1982) (official English translation: No. R–82–49, slip. op. (P.R. June 29, 1982)) (following *Colon* ). In

*Laboy v. Commonwealth of Puerto Rico,* 115 P.R.Dec. 190 (1984) (official English translation: No. R–83–303, slip. op. (P.R. March 23, 1984)), the Puerto Rico Supreme Court upheld the validity of an agency regulation similar to section 8.4 in that it gave preference to internal employees. The court said that the merit system underlying the Personnel Act is furthered by such agency regulations because "[e]xperienced employees with many years in the service stand out: these are the employees who, throughout the years and with many sacrifices have built up a record that qualifies them for continuing in the public service." *Id.* (official translation).

This line of authority persuades us that the district court correctly applied Puerto Rico law. It could reasonably derive the applicable law as follows: the PRTC promulgated regulation 8.4 under order of the Puerto Rico Supreme Court to comply with policies underlying the Personnel Act; that court has, in turn, held that such a regulation furthers the purposes of that Act; the court has also held that acts contrary to laws and regulations furthering the underlying values of the Personnel Act are void. Thus, to the extent that the plaintiffs were hired in violation of regulation 8.4, they obtained their career positions "on the basis of standards foreign to that category," and, therefore, could not, upon termination, benefit from the "property" status of such positions. *Colon* at 940.

In their reply brief, plaintiffs argue that the logic of this conclusion was rejected by the Supreme Court in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). *Loudermill* involved, *inter alia,* a due process claim by a former security guard who was discharged by the Cleveland Board of Education for allegedly lying on his job application by stating that he had never been convicted of a felony. He had, in fact, been convicted of grand larceny, but thought his conviction was only a misdemeanor when he filled out his job application.

The Court held that Loudermill was entitled to a pre-termination hearing because (1) the defendant's claim of lack of property right in his position was not raised below, (2) the question whether he had lied was an unresolved factual issue, and (3) it was undisputed that he had been hired. *Id.* at 539 n. 5, 105 S.Ct. at 1491–92 n. 5 (emphasis added).

The instant case differs in all respects. First, the issue of whether the plaintiffs had property rights in their jobs was squarely presented to the district court in the cross-motions for summary judgment. Second, the parties have not disputed the facts surrounding the plaintiffs' recruitment, hiring, and firing; the district court had before it sufficient undisputed facts to determine whether or not regulation 8.4 was complied with. Finally, and most importantly, in *Loudermill* there is no indication that under Ohio law, a false statement on an application form for a civil service position could render null and void any property rights associated with attaining such a position. The parties never even addressed that question under Ohio law. In this case, on the other hand, on submissions from the parties, the district court reasonably concluded that under Puerto Rico law, failure to hire in compliance with regulation 8.4 rendered null and void the property rights associated with the plaintiffs' positions.

The plaintiffs, nevertheless, assert that there exists a genuine dispute as to whether procedures followed for their hiring violated regulation 8.4. This is not a factual dispute but one of legal interpretation. The plaintiffs do not contest the fact that they were hired from outside PRTC without affording internal employees first consideration and without advertising the position openings in any manner. Rather, they assert that the regulation is subject to more than one construction and that the district court erroneously granted summary judgment for defendants because their recruitment "was not clearly illegal" under the regulation. We think this argument, which is best understood in the context of its presentation to the district court, lacks merit.

The plaintiffs argued before the district court that the language of subsection 8.4(2) of the regulation—"should there not exist proper internal candidates to cover the vacancy ... *or* when the Company deems that it is convenient and practical, it shall proceed to external recruitment" (emphasis added), modifies the requirement in subsection 8.4(1) that PRTC afford internal employees first consideration for job openings, and allows the company to recruit outside candidates when convenient. *See* regulation 8.4, quoted in full *supra* at pp. 3–4. While not disputing that there was no evidence that the position openings that they filled were publicized, the plaintiffs argued that subsection 8.4(3), providing for specific methods of publication as well as "other means that may reach interested parties," allows publication in any manner, including word-of-mouth. *See id.*

The district court correctly pointed out that even if it were to accept the plaintiffs' interpretation of the regulation, they failed to generate any evidence either that the company determined that it was not convenient to hire internal employees for the positions in question, or that the position openings were in any way publicized in accordance with the requirements of the regulation, if only by word-of-mouth. Thus, the plaintiffs failed to generate the factual predicates necessary to overcome the defendant's motion for summary judgment on this issue. *See Celotex*, 106 S.Ct. at 2552–53.

In any event, we disagree with the plaintiffs' interpretation of the regulation. The plaintiffs' proffered construction would render the regulation without any force or effect. External employees could be recruited at whim without prior consideration of internal candidates, and the company could publicize the openings by means, such as mere word-of-mouth, that would have no hope of adequately attracting capable candidates within or outside of PRTC.

We agree with the district court that such a construction runs counter to the objectives of the Personnel Act under which it was promulgated. Moreover, it is

at odds with the plain language of the regulation, which clearly requires the PRTC to "consider *first* internal employees of the company." Regulation 8.4, quoted in full *supra* at pp. 3–4 (emphasis added). Consistently with the merit principles of the Personnel Act, if no "suitable" internal candidate exists, the company may then, if necessary "for convenience," recruit and hire external candidates. *Id.* In addition, the requirement that PRTC must communicate job openings by the "most proper means" to attract "capable persons" logically eliminates reliance upon word-of-mouth publicity of job openings. *See id.*

This proper construction of the regulation, together with the undisputed facts, show that the plaintiffs were clearly recruited and hired in violation of the law. In light of our foregoing discussion, therefore, they had no property rights in their jobs, and the district court did not err in granting summary judgment for the defendants on the plaintiffs' due process claim.

*Affirmed.*