**Ramon E. MOJICA, et al., Plaintiffs,**

v.

**Pedro A. GALARZA, et al., Defendants.**

**Civ. No. 90–1107 (JAF).**

United States District Court,
D. Puerto Rico.

April 22, 1991.

Carlos J. Quilichini, Quilichini, Oliver, Medina & Gorbea, San Juan, P.R., José A. Cangiano, Ponce, P.R., for plaintiffs.

Juan Ramón Miranda–Díaz, Cordero Miranda & Pinto, Old San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs Ramón Mojica, his spouse, and the conjugal partnership formed by them, filed this action pursuant to 42 U.S.C. § 1983 against the Puerto Rico Telephone Company ("PRTC") and against various officials of PRTC.[1] Plaintiffs allege that defendants' actions have resulted in the denial of contract awards to plaintiff Mojica, a maintenance contractor. Federal jurisdiction is alleged pursuant to 28 U.S.C. § 1331. Before the court is defendants' motion to dismiss arguing that plaintiffs' complaint does not allege a cognizable claim under section 1983. For the reasons stated below, we agree with defendants and dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### I.

*Facts*

The facts recited below are drawn from plaintiffs' Amended Complaint. (Docket Document No. 3).

---

1. Defendant PRTC officials named in the Amended Complaint are Pedro Galarza, former President, Héctor Lugo, Corporate Officer in Charge of Security, Nelson Vélez, Western Regional Director, José Rodríguez, Legal Counsel, Jorge Naranjo, Director of Security, José Luis Cruz, Southern Regional Director of Maintenance, Ildefonso Camacho, Interim Manager of Maintenance for the Southern Region, and Fabio García, President.

Plaintiff Mojica has worked as a maintenance contractor for the past fifteen years. During that period he has worked on projects where PRTC has hired general contractors who, in turn, have hired plaintiff as a subcontractor.

In August 1988 plaintiff, while working as a subcontractor to Teleivette Corporation ("Teleivette") in Ponce, Puerto Rico, was approached by Roque Morales, PRTC's Construction Manager, about a possible contract with ABM Company ("ABM"). Receiving Morales' recommendation, plaintiff was awarded the ABM contract and began work in Adjuntas, Puerto Rico. However, after a few weeks, plaintiff was told by David Andino, an ABM official, that he would not be paid by ABM for the work completed and that legal action would be commenced against him. Plaintiff alleges no justification by Andino for these decisions.

When plaintiff went to Morales the next day with this information, Andino and Carlos Barens also were present. According to plaintiffs, the defendants again threatened Mojica and stated that they would interfere with Mojica's relationship with PRTC. Plaintiff continued to seek payment against ABM.

In December 1988, at a meeting arranged by Jorge Naranjo, Director of Security for PRTC, plaintiffs were questioned about their relationship with Morales and Lionel Santiago, another PRTC official responsible for work bids. Naranjo informed plaintiffs that Morales and Santiago were under investigation for misappropriation of funds.

In January 1989, defendant José Luis Cruz, PRTC's Director of Maintenance for the Southern Region, informed plaintiffs by phone that PRTC had canceled its contract with Teleivette because it had been illegally awarded by Santiago. Thereafter, Cruz informed plaintiff that neither Teleivette nor plaintiff would receive future PRTC contracts. However, plaintiff alleges that in a subsequent conversation between Cruz and Pedro Dávila, president of Teleivette, Cruz was willing to resume dealings with Teleivette but not with plaintiff. Further, according to plaintiffs, Cruz informed regional PRTC maintenance directors not to offer contracts to plaintiff. Defendants Lugo, Rodríguez and Galarza, all PRTC officials, were informed of the above matters by letter.

In the present action, plaintiffs claim that their civil rights were violated by defendants' conduct and seek compensatory and punitive damages. As a second cause of action, plaintiffs claim that defendants intentionally interfered with their contractual rights and invoke the pendent jurisdiction of this court.

## II.

### Discussion

#### A. Section 1983 Claim

Plaintiffs base their federal claim on 42 U.S.C. § 1983. To state a claim under section 1983, two elements must be present: "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Because PRTC is considered an instrumentality of the Puerto Rico government, *see Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169, 1170 (1st Cir.1988); *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982), our concern is with the second element necessary to establish a section 1983 claim. We must decide whether plaintiffs were deprived of a right secured by the Constitution of the United States.

Plaintiffs argue that defendants' actions deprived them of their right to be awarded contracts by PRTC. In essence, they are claiming that they have a protected property interest in the continued reception of contracts by PRTC which cannot be denied without due process of law. *See Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972);

*Beitzell v. Jeffrey,* 643 F.2d 870 (1st Cir. 1981). In *Beitzell,* the First Circuit explained the Supreme Court's ruling in *Roth* that the word "property" is not limited to ownership of real estate, chattels or money, but includes the interests that a person acquires in specific governmental benefits.

> [t]he broadening of the term "property" to include this "new property", [footnote omitted] has required the courts to determine when an interest in a government benefit rises to the level of protected "property". The Supreme Court has made clear that the answer depends in large part upon the extent to which a person has been made secure in the enjoyment of the benefit as a matter of substantive state or federal law. [cites omitted] The greater the interest and protection accorded an interest by such substantive law, the more reasonable is the holder in expecting to continue to enjoy it and in making decisions in reliance upon that expectation, and the less reasonable it is for the state to interfere directly with that enjoyment without according a fair opportunity to the holder to contest that interference.

*Beitzell,* 643 F.2d at 874. However, in *Roth,* the Supreme Court has made clear that

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of a constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

*Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

Plaintiffs' amended complaint sets forth no set of facts upon which we can find that they had a legitimate claim or were *entitled* to continue receiving PRTC contract awards. In fact, plaintiffs were never in privity of contract with PRTC, since, as subcontractors, they were hired by the general contractors who, in turn, were contracted by PRTC. Even if we were to find that plaintiffs and PRTC were in privity of contract (which we do not), we can find no federal or Puerto Rico substantive law that would grant plaintiffs an entitlement or a claim that would trigger a fourteenth amendment due process right. Because plaintiffs have not satisfied this threshold requirement for commencement of a section 1983 suit, we must dismiss plaintiffs' 1983 claim. *See Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).

In *Eastway Constr. Corp. v. New York,* 762 F.2d 243 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), the United States Court of Appeals for the Second Circuit was faced with a factual scenario very similar to the present case. In *Eastway,* a general contractor, denied access to redevelopment projects sponsored or approved by the City of New York, brought a section 1983 suit alleging, *inter alia,* civil rights violations. The City admitted that it had refused to allow plaintiff-contractor to participate in city-sponsored redevelopment projects. On appeal, the Second Circuit affirmed the district court's dismissal of the contractor's civil rights claim and found that plaintiff did not "allege the deprivation of any federally secured right." *Eastway,* 762 F.2d at 249. As the court opined,

> [c]ertainly, Eastway desired—and perhaps even needed or expected—to continue acting as a general contractor on public redevelopment projects. But it fails to point to a single constitutional, statutory or contractual provision that would entitle it to do so. And absent any such right, its claim that the City's actions violate § 1983 is incorrect as a matter of law.

*Eastway,* 762 F.2d at 250. *See Walentas v. Lipper,* 862 F.2d 414, 418–20 (2d Cir. 1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1747, 104 L.Ed.2d 183 (1989) (where contractor "had no legitimate claim of entitlement to be named developer of the project, the district court correctly ruled that Walentas stated no claim against Lipper for deprivation of a constitutionally protected

property interest in violation of section 1983"); *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 967 (2d Cir.1988) ("we hesitate to extend the doctrine further to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a governmental contractor"). The First Circuit is in accord with the Second Circuit's reasoning. *See Boston Environmental Sanitation Inspectors Ass'n v. Boston,* 794 F.2d 12 (1st Cir.1986); *Casey v. Depetrillo,* 697 F.2d 22, 23 (1st Cir.1983) (no section 1983 claim where complaint alleges a breach of contract claim "for which the state provides a complete and adequate remedy"); *Bleeker v. Dukakis,* 665 F.2d 401 (1st Cir.1981); *Jiménez v. Almodóvar,* 650 F.2d 363, 370 (1st Cir.1981) ("mere breach of contractual right is not a deprivation of property without *constitutional* due process of law").

Like the cases cited above, plaintiffs come to this court alleging facts which appear to make out a breach of contract and/or a tortious interference with contract claim. They attempt to "clothe" these state law claims with a constitutional "garment" by simply alleging civil rights violations. Stripped down, however, plaintiffs' "civil rights" violation is nothing more than an overly-dressed state law claim.

Finally, in *Eastway,* the court concluded that while the district court had relied on affidavits and so disposed of the claim by granting summary judgment, "it would have been equally proper to dismiss the civil rights count for failure to state a claim, pursuant to Rule 12(b)(6)." *Eastway,* 762 F.2d at 250. We concur and dismiss plaintiffs' section 1983 claim pursuant to Fed.R.Civ.P. 12(b)(6).

### B. Pendent State Claim

We have dismissed plaintiffs' section 1983 claim and it formed the sole basis for federal jurisdiction. We, therefore, dismiss plaintiffs' remaining state law claim.

### III.

#### Conclusion

Because we find that plaintiffs' complaint alleges no cognizable section 1983

claim, we DISMISS plaintiffs' first cause of action.

Since there remains no basis for the exercise of federal jurisdiction, we DISMISS plaintiffs' remaining state law claim.

IT IS SO ORDERED.