# United States Court of Appeals
## For the First Circuit

No. 14-1176

SONIA I. VÉLEZ-VÉLEZ; PEDRO A. RODRÍGUEZ-CINTRÓN;
and CONJUGAL PARTNERSHIP RODRÍGUEZ-VÉLEZ,

Plaintiffs, Appellants,

v.

PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY;
RUBÉN HERNÁNDEZ-GREGORAT, in his individual and official
capacity as Secretary of Transportation and Public Works and
Director of the Highway and Transportation Authority; and
BRENDA GOMILA-SANTIAGO, in her individual and official capacity
as Executive Director of Human Resources,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

Before

Torruella, Lynch, and Thompson,
Circuit Judges.

Juan M. Frontera-Suau, with whom Kenneth Colón and Frontera
Suau Law Offices, PSC, were on brief, for appellants.
Yassmin González-Vélez, with whom Puerto Rico Legal
Advocates, PSC, was on brief, for Puerto Rico Highway and
Transportation Authority, Rubén Hernández-Gregorat, in his
official capacity, and Brenda Gomila-Santiago, in her official
capacity.
Michelle Camacho Nieves, with whom Margarita Mercado-
Echegaray, Solicitor General, and Susana I. Peñagarícano-Brown,

Assistant Solicitor General, Puerto Rico Department of Justice, were on brief, for Rubén Hernández-Gregorat and Brenda Gomila-Santiago, in their individual capacities.

July 29, 2015

**LYNCH**, **Circuit Judge**.  The question presented is whether plaintiff Sonia Vélez-Vélez's political discrimination claim was timely brought within the one-year statute of limitations for such 42 U.S.C. § 1983 actions filed in Puerto Rico.  We agree with the district court that the logic of the Supreme Court's decisions in Delaware State College v. Ricks, 449 U.S. 250 (1980), and Chardon v. Fernandez, 454 U.S. 6 (1981) (per curiam), requires finding that the claim here was untimely.  See Vélez-Vélez v. P.R. Highway & Transp. Auth., No. 11-2231, 2014 WL 104928 (D.P.R. Jan. 9, 2014).  We affirm the entry of summary judgment for the defendants.

Vélez-Vélez's political belief discrimination termination claim is all too familiar after Puerto Rico elections.  Vélez-Vélez, a Popular Democratic Party ("PDP") member, worked for the Puerto Rico Highway and Transportation Authority (the "Transportation Authority") under a prior PDP administration, after being hired under that administration's interpretation of a set of policies.  But, she lost her job after an election returned the opposing political party, the New Progressive Party ("NPP"), to office.  The new NPP administration undertook a review of whether the former administration's hiring policies in fact complied with Puerto Rico law.  They determined that one such set of policies was contrary to Puerto Rico law and that the employment of those hired under the erroneous determinations must be

terminated. This decision, Ruling No. 2010-01, was announced on January 19, 2010, almost two years before Vélez-Vélez brought suit.

Vélez-Vélez was in the group of employees who had been hired under the erroneous determinations. There is no evidence that the members of that group were not all terminated or that the new interpretation of the policies was not uniformly applied. Vélez-Vélez was individually informed by letter, dated February 10, 2010, that she would be terminated under the new ruling. She received this letter on February 11, 2010, some twenty-two months before she brought suit.

Vélez-Vélez was told that she could have a hearing, which she did on June 7, 2010. At no time did she say an error had been made as to whether she was an employee under the policy regarding termination. On November 8, 2010, the Examining Officer recommended affirming the decision to terminate Vélez-Vélez's employment.

Her claim is that the clock did not begin to run until she was formally terminated after the hearing. But, the purpose of the hearing was not to revisit the re-interpretation of policy that her superiors had already made in Ruling No. 2010-01. Vélez-Vélez has never denied that Ruling No. 2010-01 did, in fact, nullify the Rulings on which her transfer was based. The statute of limitations began to run when she was informed of this relevant decision, and its undisputed effect on her position, by letter on

February 11, 2010.  To hold otherwise would be to pervert the holdings of Ricks and Chardon.

I.

In 2001, Vélez-Vélez was transferred from the Puerto Rico Labor Relations Board to the Transportation Authority to be the Director of Human Resources Transactions.  Vélez-Vélez concedes that her transfer was based on Ruling No. 2001-13, issued on April 25, 2001, and Ruling No. 2001-24, issued on June 18, 2001, by the Secretary of the Puerto Rico Department of Transportation and Public Works at that time, José Izquierdo Encarnación.[1]

In November of 2008, Luis Fortuño Burset won the general election in Puerto Rico as the NPP candidate for Governor.  The result was a change in the administration from the PDP to the NPP.  Two months later, Fortuño appointed Rubén Hernández-Gregorat to be the new Secretary of the Puerto Rico Department of Transportation and Public Works, and the Executive Director of the Transportation Authority.

Hernández-Gregorat then appointed Luis Sánchez Casanova to be the Director of Human Resources at the Transportation Authority.  When Sánchez Casanova left this position on May 31, 2009, Hernández-Gregorat appointed Brenda Gomila-Santiago.  Vélez-

---

[1]  The parties' filings occasionally misidentify Ruling No. 2001-24 as "Ruling No. 2001-14."  There is no dispute that, in these instances, the parties are referring to the same ruling which was issued on June 18, 2001.

Vélez alleges that both Hernández-Gregorat and Gomila-Santiago were members of the NPP.

Vélez-Vélez, in contrast, is an open member of the PDP. The defendants allege that Vélez-Vélez never told them of her political affiliation and she does not say that she did. But, Vélez-Vélez asserts that "every one knew the political affiliation of the other employees because everyone talked about politics in the office" and because she attended campaign events when politicians visited the office's cafeteria.

Vélez-Vélez alleges that Sánchez Casanova told her, before he left in May of 2009, that "Hernandez Gregorat was putting pressure upon him to issue letters of intention to terminate the employment of the Popular Democratic employees that worked at the [Transportation Authority] Human Resources office," including her. Hernández-Gregorat allegedly told Sánchez Casanova that he was "looking for an attorney that was willing to justify the manner in which he wanted to terminate the employment of the Popular Democratic employees."

Vélez-Vélez alleges that, "immediately" after Gomila-Santiago replaced Sánchez Casanova in June of 2009, Gomila-Santiago diminished Vélez-Vélez's working responsibilities. As examples, Gomila-Santiago allegedly removed Vélez-Vélez's responsibility to supervise the personnel appointment process, excluded her from Directors' meetings which she had previously

- 6 -

attended, and briefly denied her access to the human resources database. In addition, Vélez-Vélez alleges that she was "moved . . . from office space to office space and finally assigned . . . an office that did not compl[y] with her work requirements," and that Gomila-Santiago "took away equipment assigned to [Vélez-Vélez's] office."

On January 19, 2010, Hernández-Gregorat issued Ruling No. 2010-01, which declared Ruling No. 2001-13 and Ruling No. 2001-24 to be null and void since both were "in express contradiction" of Puerto Rico's regulations concerning the merit principle. Ruling No. 2010-01, which went into effect immediately upon its approval, "authorize[d] the Deputy Executive Director of the Authority to take those measures which [were] legally pertinent in order for the transactions of personnel enacted by the [Transportation Authority] under the aforesaid Rulings be revised, corrected, or annulled pursuant to applicable law."

An audit of personnel files, conducted by Iris Azalia Ocasio Sandoval, identified Vélez-Vélez's transfer as having been authorized by the Rulings recently rendered null and void. That meant that her appointment was nullified. See Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1174 (1st Cir. 1988). Vélez-Vélez asserts that this audit selectively targeted transfers during the prior PDP administration, but admits that she does not know the details of the audit and has no evidence of that. Vélez-Vélez alleges

that nine other employees -- all members of the PDP -- were dismissed "as a result of the resolution being declared null and void."

In a letter dated February 10, 2010, Hernández-Gregorat informed Vélez-Vélez of the results of the audit. He explained that her transfer was authorized by Ruling No. 2001-13 and Ruling No. 2001-24, which were "declared to be fully null and void according to Decision 2010-1 from January 19, 2010, since said provisions, among others, violated the state of the law in effect at that time as to [the] transfer of human resources." On the basis of Ruling No. 2010-01, Hernández-Gregorat advised Vélez-Vélez of his "intention to declare [her] original transfer to the . . . Transportation Authority to be fully null and void and consequently to order that [her] service therein be terminated."

In the same letter, Hernández-Gregorat informed Vélez-Vélez of her right "to request an informal administrative hearing" within twenty days. Hernández-Gregorat explained that, "[o]nce the aforementioned period has elapsed or once the Report of the Examining Officer presiding [over] the informal hearing if you request one is received, we shall notify you of the legally appropriate final decision."

Vélez-Vélez acknowledged receipt of the letter on February 11, 2010. After a timely request, an informal

- 8 -

administrative hearing was held on June 7, 2010. Vélez-Vélez appeared at the hearing with counsel, Ramón Rodríguez.

On November 8, 2010, the Examining Officer issued a Report and Recommendation that recommended that "the decision of the Executive Director notified by way of his letter dated February 10, 2010 be upheld, and that consequently Ms. Sonia I. Velez be terminated from service and employment." The Examining Officer agreed that "Ruling No. 2001-13 and Ruling No. 2001-24 had the effect of rendering the principle of merit and open competition null and void as mechanisms for determining who serves and who is chosen to serve in a position within the [Transportation Authority]." For example, in Vélez-Vélez's case, the Examining Officer found that she "did not apply in response to a call for the position," "[t]here was no registry of eligible candidates," and "[t]here was . . . no equivalency in the position." In effect, it was a "'transfer through promotion without opposition.'"

Since Puerto Rico law "prohibit[s] every personnel transaction that is contrary to the merit principle," the Examining Officer concluded that Vélez-Vélez's appointment must be rendered null and void. "Therefore," the Examining Officer explained, "invoking the intrinsic qualities and other good aptitudes of [Vélez-Vélez] [was] not a valid argument." Nor was the argument that "everything has been rectified over time." The Examining Officer certified that a copy of his decision had been sent to

- 9 -

Vélez-Vélez's counsel, but did not specify the date on the certification.

By letter dated December 23, 2010, Hernández-Gregorat informed Vélez-Vélez of her formal termination. Vélez-Vélez received this letter on January 7, 2011.

Vélez-Vélez and her husband, Pedro Rodríguez-Cintrón, filed the instant complaint on December 20, 2011. Vélez-Vélez alleged (1) that her treatment and the audit that resulted in her termination were politically motivated, in violation of the First Amendment; (2) that the February 10, 2010, intent-to-terminate letter failed to comply with Due Process; and (3) that the defendants had violated her rights under the laws and constitution of Puerto Rico.[2]

On January 9, 2014, the district court granted the defendants' motion for summary judgment. Vélez-Vélez, 2014 WL 104928, at *1. The district court held that "Defendants are correct that the discrimination claim is time-barred." Id. at *3. In addition, the district court dismissed the Due Process and state law claims since Vélez-Vélez failed to sufficiently advance either at the summary judgment stage. Id. at *7-8.

---

[2] An additional Equal Protection claim was dismissed "as it [was] based on the same cause of action as [plaintiff's] First Amendment claim," and a conspiracy claim was dismissed as insufficiently pled.

- 10 -

Vélez-Vélez now appeals. She argues, primarily, that her political discrimination claim is not time-barred. She also asserts that the district court erred when it dismissed her supplemental state law claim under Puerto Rico's antidiscrimination statute, Puerto Rico Law No. 100. Vélez-Vélez has not appealed the district court's dismissal of her due process claim or any state law claim other than Puerto Rico Law No. 100.

We review the district court's decision to grant summary judgment de novo, "taking the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." Barraford v. T & N Ltd., 778 F.3d 258, 263 (1st Cir. 2015). "Issues of timely filing may be decided under Rule 56 if the relevant facts are sufficiently clear." Jensen v. Frank, 912 F.2d 517, 520 (1st Cir. 1990).

## II.

"Section 1983, which borrows its limitations period from state law, carries a one-year statute of limitations in Puerto Rico." Morán Vega v. Cruz Burgos, 537 F.3d 14, 20 (1st Cir. 2008); see also P.R. Laws Ann. tit 31, § 5298(2) (providing the one-year limitations period for personal injury claims). The statute of limitations begins to run "'when the plaintiff knows, or has reason to know of the injury on which the action is based.'" Id. (quoting Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007)). In other words, we ask, "at what juncture did appellant reliably know

- 11 -

of the injury to which this lawsuit relates?" Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 749 (1st Cir. 1994).

In this case, Vélez-Vélez asserts that she has suffered two injuries: harassment while she was employed and her later termination as a result of the audit. We begin with the timing of Vélez-Vélez's termination. Since Vélez-Vélez filed this lawsuit on December 20, 2011, her claim is time-barred if she knew, or had reason to know, of her termination before December 20, 2010.

The Supreme Court has made clear that the statute of limitations for a terminated employee's claim can begin to run before he or she has a chance to contest the relevant employment decision and before he or she is formally terminated. In Delaware State College v. Ricks, 449 U.S. 250 (1980), the plaintiff argued that his denial of tenure and ultimate termination were discriminatorily motivated. Id. at 257. The Court concluded that "the only alleged discrimination occurred -- and the filing limitations period therefore commenced -- at the time the tenure decision was made and communicated to Ricks." Id. at 258; see also id. at 257 n.8. His later termination was not an independent discriminatory act; it was the "delayed, but inevitable, consequence of the denial of tenure." Id. at 257-58; see also Knox v. Davis, 260 F.3d 1009, 1014 (9th Cir. 2001).

The Supreme Court then rejected the argument that the relevant tenure decision was not final until after Ricks' grievance

was denied.  Ricks, 449 U.S. at 260-61.  The Court recognized the possibility that the Board of Trustees could "change its prior decision if Ricks' grievance were found to be meritorious."  Id. at 261.  "But," the Court explained, "entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative."  Id.  The Court highlighted that "[t]he grievance procedure, by its nature, is a remedy for a prior decision, not an opportunity to influence that decision before it is made."  Id.

One year later, in Chardon v. Fernandez, 454 U.S. 6 (1981) (per curiam), the Supreme Court applied the logic of Ricks to plaintiffs' claims that their employment had been terminated for political reasons.  Id. at 7-8.  In that case, the plaintiffs received notice that their appointments would later end.  Id. at 7.  The Court held that the statute of limitations began to run when the plaintiffs received the notification that their employment would be terminated, and not when the employment was actually terminated.  Id. at 8.  The relevant date was when the "operative decision" had been made and communicated to the plaintiffs.  Id.  The Court reiterated that "'[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.'"  Id. (alteration in original) (quoting Ricks, 449 U.S. at 257).

Here, Vélez-Vélez's termination was a "delayed, but inevitable, consequence" of the decision to render the Rulings that authorized her original transfer null and void. See Ricks, 449 U.S. at 257-58. Specifically, on January 19, 2010, Hernández-Gregorat issued Ruling No. 2010-01, which declared Ruling No. 2001-13 and Ruling No. 2001-24 to be null and void. The audit identified Vélez-Vélez's transfer as being authorized by the now-nullified Rulings -- a fact which Vélez-Vélez has never disputed. Hernández-Gregorat informed Vélez-Vélez of Ruling No. 2010-01, and the effect on her transfer, in a letter dated February 10, 2010. As a result, he advised Vélez-Vélez of his "intention to declare [her] original transfer to the [Transportation Authority] to be fully null and void and consequently to order that [her] service therein be terminated."

Vélez-Vélez argues that, regardless of Hernández-Gregorat's initial intent to terminate her under his new Ruling, she was given an opportunity to change his mind at a pre-termination hearing held on June 7, 2010. She has presented no evidence that she contested the legality of the nullification decision, or its applicability to her own transfer. Nevertheless, Vélez-Vélez argues that she did not reliably know of her termination until she learned that the pre-termination hearing had

been unsuccessful by virtue of Hernández-Gregorat's final decision, dated December 23, 2010.[3]

Generally, due process requires a pre-termination hearing to resolve "factual disputes" as well as "the appropriateness or necessity of the discharge" for an employee with a state-protected property interest. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542-43 (1985); see also Jones v. City of Boston, 752 F.3d 38, 56-57 (1st Cir. 2014). In this case, the only factual issue, which Vélez-Vélez does not dispute, was whether she fell within the group of employees whose employment had been nullified as contrary to the merit principle by Ruling No. 2010-01. The decisionmaker had no further discretion since "[e]mployees whose hiring contravened Commonwealth laws and regulations . . . are not vested with a property interest in their career positions." Casiano-Montañez v. State Ins. Fund Corp., 707 F.3d 124, 129 (1st Cir. 2013); see also González-De-Blasini v. Family Dep't, 377 F.3d 81, 86 (1st Cir. 2004); De Feliciano v. De Jesus, 873 F.2d 447, 452-55 (1st Cir. 1989); Kauffman, 841 F.2d at 1173-76. Instead, "'[t]heir career appointments are null and void ab initio.'"

---

[3] We note the implausibility of Vélez-Vélez's assertion that "it was not until she received the termination letter dated December 23, 2010, that she learned that her responses in the Loudermill pre-termination hearing . . . had been to no avail." After all, the Examining Officer issued his report and recommendation on November 8, 2010, which affirmed Hernández-Gregorat's intent to terminate Vélez-Vélez's employment in no uncertain terms.

Casiano-Montañez, 707 F.3d at 129 (quoting Kauffman, 841 F.2d at 1173).

The underlying basis for Vélez-Vélez's termination thus proves critical. The "operative decision" to nullify Ruling No. 2001-13 and Ruling No. 2001-24 had been made and formally issued in Ruling No. 2010-01 as of January 19, 2010. See Chardon, 454 U.S. at 8. As Vélez-Vélez recognized in her opposition to the defendants' motion for summary judgment, it was "Hernandez Gregorat's execution of Resolution 2010-01 which was the one that actually provoked [her] dismissal of employment." The pre-termination hearing provided Vélez-Vélez with a chance to contest the applicability of Ruling No. 2010-01 to her position, but it was "not an opportunity to influence that decision before it [was] made." See Ricks, 449 U.S. at 261.

Vélez-Vélez cites Pastrana-López v. Puerto Rico Fire Department, 338 F. App'x 8 (1st Cir. 2009) (per curiam) (unpublished opinion), as support for her contrary position, but that case is inapposite. There, the plaintiff alleged that he was terminated from his position in the Puerto Rico Fire Department for speaking about corruption. Id. at 9. We held that it was not until the plaintiff received notice of his actual termination -- "after [he] requested and received a pre-termination hearing" -- that he reliably knew that he had been terminated. Id. at 10. But, the termination in that case was the allegedly discriminatory

- 16 -

decision at issue rather than the necessary result of an earlier, allegedly discriminatory, decision -- such as the denial of tenure in Ricks or the nullification Ruling in this case. See id. at 9-10.

Here, Vélez-Vélez reliably knew of her impending termination when she received Hernández-Gregorat's letter, dated February 10, 2010, on February 11, 2010. At that time, the relevant decision had been made and communicated to Vélez-Vélez even if the "effects of [that decision] . . . did not occur until later." See Ricks, 449 U.S. at 258; see also Chardon, 454 U.S. at 8. Her claim of political discrimination twenty-two months later, on December 20, 2011, is time-barred.

This conclusion also dooms Vélez-Vélez's harassment claim. Vélez-Vélez does not dispute the district court's conclusion that the reduction in her responsibilities occurred before December 20, 2010. See Vélez-Vélez, 2014 WL 104928, at *6-7. As the district court noted, most of Vélez-Vélez's allegations on this front occurred "'immediately after [Gomila-Santiago] was appointed'" in June of 2009. Id. at *7. Instead, Vélez-Vélez argues that these earlier actions "cannot be separated and balkanized from the discriminatory application of the audit which ended up in the intention to terminate [her] and finally terminating her from the same on December 23, 2010."

Vélez-Vélez attempts to seek refuge under the continuing violation doctrine, by which a plaintiff can "seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts." Cordero-Suárez v. Rodríguez, 689 F.3d 77, 83 (1st Cir. 2012) (citation and internal quotation marks omitted). "But although the continuing violation doctrine can render otherwise time-barred conduct actionable, the doctrine still requires some anchoring violation within the limitations period." Id. Here, Vélez-Vélez attempts to anchor her earlier allegations to the formal termination that occurred within the statute of limitations period.[4]

We need not decide whether the continuing violation doctrine would apply to the facts of this case since, even if it did, no violation occurred within the relevant time frame. Vélez-Vélez knew, or should have known, of her termination prior to December 20, 2010. The final signature on the formal notice of termination on December 23, 2010, saves neither her termination

---

[4]    For this reason, we reject Vélez-Vélez's assertion that the district court's summary judgment decision on her termination claim should be vacated as a sua sponte ruling. According to Vélez-Vélez, the defendants "had only argued that [her] harassment discrimination claim was time barred" in their motion for summary judgment and, thus, the timeliness of her termination discrimination claim was not properly raised in the district court. Yet, Vélez-Vélez's own argument makes clear that the timeliness of her harassment claim relies on the timeliness of her termination claim. Hence, the defendant's motion sufficiently raised the statute of limitations for both claims.

claim nor her harassment claim.  See Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992).

## III.

Vélez-Vélez also argues that her discrimination claim under Puerto Rico Law No. 100 should have survived summary judgment.  But, she did not present these arguments to the district court.  Instead, in opposition to the defendants' motion for summary judgment, Vélez-Vélez cursorily stated: "Defendants' arguments regarding Law 100 and Civil [C]ode Article 1802 and 1803 [are] a frivolous rehash of the same arguments that were already rejected, as a matter of law, by this Court [on the defendants' motions to dismiss]."  Her arguments on appeal are therefore waived.  See Landrau-Romero v. Banco Popular De P.R., 212 F.3d 607, 612 (1st Cir. 2000).  As we have explained, "where a plaintiff fails to present arguments to the district court in opposition to a defendant's motion for summary judgment, we have refused to consider those arguments for the first time on appeal."  Davis v. Lucent Techs., Inc., 251 F.3d 227, 232 (1st Cir. 2001).

## IV.

We affirm the district court's grant of summary judgment to the defendants.

So ordered.

- 19 -