# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 28, 2024

Lyle W. Cayce
Clerk

————————

No. 24-30119

————————

David Stanley,

*Plaintiff—Appellant*,

*versus*

Scott Morgan; Wayne Griffin; Thomas Glover; Monte Potier; City of Lafayette; Consolidated Government of Lafayette,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:22-CV-1655

———————————————————————

Before Jones, Willett, and Engelhardt, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

The Lafayette Police Department suspended police officer David Stanley ("Stanley") and transferred him to another unit following an investigation into two of his Facebook posts. Over one year, one administrative appeal, and two state court petitions later, Stanley sued four police chiefs, the City of Lafayette, and the Consolidated Government of Lafayette (collectively, "LPD") in federal court for alleged First

No. 24-30119

Amendment violations under 42 U.S.C. § 1983. The district court dismissed the claims as prescribed.

Stanley appeals, hoping to rewind the prescription clock on two grounds. First, he insists that his § 1983 claims could not have accrued until an administrative appeal of the adverse actions concluded. Second, and alternatively, he contends that his state court petitions interrupted prescription under Louisiana law. Because United States Supreme Court precedent forecloses his first argument, and the Louisiana Supreme Court's recent opinion in *Kling v. Hebert* cuts against the second, we AFFIRM.

## I.     Factual and Procedural Background

Stanley posted on Facebook opposing a Louisiana bill and praising the LPD in connection with a traffic stop. On August 11, 2020, following notice of an investigation into the first post's potential violations of LPD policies, LPD informed Stanley that he would be suspended for fourteen days. Distressed by LPD's decision, Stanley took sick leave for approximately one year before the suspension took effect.

The following week, while on leave, Stanley appealed his suspension to the Municipal Fire and Police Civil Service Board ("Civil Service Board") pursuant to La. R.S. 33:2501. On August 20, 2020, Stanley filed a Petition for Temporary Restraining Order ("TRO") and Preliminary Injunction in state court, seeking to enjoin LPD from imposing the suspension. The state district court granted the TRO, and LPD appealed. On September 18, 2020, also during his leave, LPD transferred Stanley from the K-9 division to the Uniform Patrol division.

Later that fall, the state appellate court dismissed LPD's TRO appeal, finding that the TRO had dissolved by operation of law. Stanley then re-filed his petition with the state district court on November 20, 2020, seeking an injunction regarding both the suspension and the transfer from the K-9

division. In the spring of 2021, the state district court held a hearing on the petition and ultimately granted LPD's exception of prematurity, finding that Stanley was required to first finalize the appeal of his suspension and transfer with the Civil Service Board.

Stanley returned to work on June 11, 2021. That day, he received and signed formal written notice of the suspension. The suspension became effective on June 14, 2021.

On February 9, 2022, the Civil Service Board heard Stanley's appeal. The Civil Service Board upheld Stanley's transfer but reduced the suspension from fourteen to three days. Stanley then appealed to the state district court.

On June 14, 2022, Stanley filed suit in federal district court, seeking damages pursuant to § 1983 based on the alleged violations of his First Amendment rights and retaliation. LPD filed a Rule 12(b)(6) motion to dismiss, arguing that Stanley's claims were prescribed. The magistrate judge agreed. The magistrate judge found that the applicable one-year prescriptive period commenced when Stanley was notified of each disciplinary action, which occurred—at the latest—on the date he signed notice of the suspension, June 11, 2021. The claims were therefore prescribed when he filed suit on June 14, 2022. The magistrate judge also concluded that Stanley's state court petitions did not interrupt prescription because they failed to assert any federal claims or seek monetary damages. Stanley filed objections to the Report and Recommendation. He asserted for the first time in the objections that his § 1983 claims did not accrue until February 9, 2022, when the Civil Service Board adjudicated his appeal.

The district court stayed the proceedings pending resolution of this court's certified question to the Louisiana Supreme Court concerning interruption. *See Kling v. Hebert* (*Kling I*), 60 F.4th 281 (5th Cir. 2023).

No. 24-30119

Following an answer from the Louisiana Supreme Court in *Kling v. Hebert* (*Kling II*), 378 So. 3d 54 (La. 2024), the district court reopened Stanley's case and accepted supplemental briefing on *Kling II*'s application. The district court then adopted the Report and Recommendation, dismissing Stanley's claims as prescribed. Stanley timely appealed.

## II.    Standard of Review

We review orders on Rule 12(b)(6) motions to dismiss *de novo*. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 253 (5th Cir. 2021). "Dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations." *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999); *see also Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014) ("A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling.").

## III.    Analysis

Section 1983 does not contain its own statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Instead, § 1983 borrows its limitations period from state law. *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018). In Louisiana, the limitations period is referred to as the "prescriptive period." *See Brown v. Pouncy*, 93 F.4th 331, 332 n.1 (5th Cir. 2024). The prescriptive period for personal injury actions is one year. LA. CIV. CODE art. 3492 ("Delictual actions are subject to a liberative prescription of one year.").[1] So Stanley had one year from the date his § 1983 claims accrued to file his complaint.

---

[1] Article 3492 was repealed and replaced by LA. CIV. CODE art. 3493.1, which took effect on July 1, 2024. Article 3493.1 extends the prescriptive period for delictual

a. Stanley's § 1983 claims accrued upon notice of the adverse action.

"Federal law governs when a cause of action under § 1983 accrues." *Redburn*, 898 F.3d at 496. "The limitations period for federal claims begins to run when a plaintiff 'knows or has reason to know' of the injury, or in this case, when [Stanley] received notice of the alleged [unconstitutional] decision that is also the basis of his . . . claims." *McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850, 863 (5th Cir. 1993) (quoting *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)). In other words, the accrual date "is judged not from the date the injury ceases, but from the earliest date a plaintiff was or should have been aware of his injury and its connection with the defendant." *Brossette v. City of Baton Rouge*, 29 F.3d 623 (5th Cir. 1994) (per curiam).

Stanley posits a different point for accrual. He contends that when an employee chooses to participate in an elective administrative appeal of the adverse employment decision, a § 1983 claim arising from that action cannot accrue until the appeal is complete. In his view, this is because the adverse action for which he seeks redress "does not become 'final' until the Civil Service Board has acted." He therefore could not have filed his § 1983 claims until February 9, 2022, when the Civil Service Board acted on his administrative appeal.[2] Decades of Supreme Court precedent dictate otherwise.

---

actions to two years. But because the extended period "shall be given prospective application only and shall apply to delictual actions arising after the effective date of this Act," the one-year prescriptive period applies here. Tort Actions, 2024 La. Acts 423.

[2] Stanley raised this argument for the first time in his objections to the magistrate judge's Report and Recommendation. As such, the argument is forfeited. *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir. 2024) (The court "considers arguments forfeited if they are not raised before a magistrate judge, even if they are subsequently raised before the reviewing district court in objections to the magistrate judge's report and recommendation."). Nevertheless, we have "considerable discretion in deciding whether to consider an issue that was not raised below" if the issue is "a purely

No. 24-30119

It is a "settled rule" that "exhaustion of state remedies is not a prerequisite to an action under § 1983." *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019) (citations omitted). Quite the opposite, § 1983 provides "individuals *immediate* access to the federal courts notwithstanding any provision of state law to the contrary." *Felder v. Casey*, 487 U.S. 131, 147 (1988) (emphasis added) (quoting *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 504 (1982)). It does not require individuals to "seek redress in the first instance from the very state officials whose hostility to those rights precipitated their injuries." *Id.* Thus, exhaustion does not determine accrual.

If there were any doubt about the matter, the Supreme Court obviated it in *Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980). In *Ricks*, the Supreme Court held that limitations periods for employment-based civil rights claims "commence when the employer's decision is made." 449 U.S. at 261 (addressing limitations in the Title VII context);[3] *see also Chardon v. Fernandez*, 454 U.S. 6, 7–8 (1981) (per curiam). The employer's decision is not made any less final—and accrual is not delayed—by the existence of a grievance process. Indeed, the process "by its nature, is a *remedy* for a prior

---

legal matter and failure to consider the issue will result in a miscarriage of justice." *Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021). The issue is purely a legal matter, but it is less clear that failure to consider it will result in a miscarriage of justice. Stanley provides no explanation for his failure to make this argument before the magistrate judge, and there was ample opportunity to do so. *See Dellucky v. St. George Fire Prot. Dist.*, No 23-30810, 2024 WL 3688722, at *6 (5th Cir. Aug. 7, 2024). Still, out of an abundance of caution, we address his argument on appeal and determine that it fails on the merits.

[3] Employment discrimination claims under §§ 1981 and 1983 are similar to those brought under Title VII. Indeed, § 1983 claims arising in the employment discrimination context "are analyzed under the evidentiary framework applicable to claims arising under Title VII of the Civil Rights Act of 1964." *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999). *Ricks* therefore applies to the § 1983 claims at issue in this employment case. *See id.*; *see also Velez-Velez v. P.R. Highway & Transp. Auth.*, 795 F.3d 230, 235 (1st Cir. 2015) (applying the *Ricks* limitations analysis to a § 1983 claim based on political discrimination in the employment context).

decision, not an opportunity to *influence* that decision before it is made." *Ricks*, 449 U.S. at 261. For this reason, the "pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Id.*

We previously concluded that *Ricks* foreclosed delayed accrual and equitable tolling arguments based on an employee's decision to pursue an administrative appeal. *See, e.g.*, *Holmes v. Tex. A&M Univ.*, 145 F.3d 681, 685 (5th Cir. 1998) ("Holmes deserves no equitable tolling for the pendency of his university grievance procedures, a remedy which he need not have pursued."); *West v. Miss. Dep't of Pub. Safety*, 37 F. App'x 712 (5th Cir. 2002) (per curiam) (Employee was not entitled to equitable tolling on the basis that "state law required her to exhaust internal grievance procedures before filing a complaint with the EEOC"). We see no basis to depart from this long-settled principle here, and Stanley provides none.[4]

In sum, a § 1983 claim, which seeks to vindicate violations of constitutional rights, exists separate and apart from any collateral review process. The clock starts ticking for an employment-based § 1983 claim when the employee receives notice of the adverse action, and an elective administrative appeal cannot stop or turn back the clock. Thus, Stanley's appeal to the Civil Service Board neither forestalled accrual nor tolled limitations. Because Stanley filed his § 1983 suit on June 14, 2022, over one year after receiving written notice of his suspension, time is not on Stanley's

---

[4] Stanley does not address *Felder* or *Ricks*. Instead, he largely relies on cases involving § 1983 due process claims based on alleged defects in the administrative appeals' procedures. *See, e.g.*, *Thomas v. City of Houston*, 619 F. App'x 291, 295–96 (5th Cir. 2015) (per curiam); *Arezzo v. City of Hoboken*, 719 F. App'x 115, 117–18 (3d Cir. 2018); *Reid v. City of Flint*, 7 F.3d 234, 234 (6th Cir. 1993). Because Stanley does not assert a procedural due process claim or challenge the administrative appeals process itself, these cases are inapposite.

side. Unless the Louisiana doctrine of interruption revives it, the § 1983 claims are prescribed.

b. <u>Stanley's state court petitions did not interrupt prescription.</u>

Prescription may be interrupted "by the filing of suit in a court of competent jurisdiction and venue." *Cichirillo v. Avondale Indus., Inc.*, 917 So. 2d 424, 430 (La. 2005); *see* LA. CIV. CODE art. 3462. If the suit interrupts prescription, interruption "continues as long as the suit is pending." *Id.*; *see* LA. CIV. CODE art. 3463, 3466. Stanley contends that his August 20, 2020 and November 20, 2020 state court petitions interrupt prescription here.

The test for interruption has not always been clear to us. *See Kling I*, 60 F.4th at 283. In *Kling I*, an employee was terminated, allegedly for submitting written complaints about workplace and ethics violations. *Id.* at 282–83. He sued his employer for violating Louisiana's constitutional right to free expression but asserted no federal claims. *Id.* Eight years after his termination, he filed a § 1983 claim on the same facts, asserting that his state court suit—which did not bring First or Fourteenth Amendment claims— interrupted prescription. *Id.* at 283. He contended that the failure to assert the federal claims in his state court suit was of no moment because Louisiana takes a broader view of the phrase "cause of action," defining it to include "the operative facts at issue." *Id.* at 286.

Though we found no support for the employee's definition under Louisiana law, we noted cloudy authority on the question whether a previous suit could interrupt prescription on an unasserted claim. *Id.* Although virtually every federal district court to consider the issue had held that "a pending state action does not interrupt prescription as to unasserted federal causes of action," Louisiana appellate courts were less uniform, and the Louisiana Supreme Court had yet to speak clearly on the issue. *Id.* at 286–87. We then certified a question to the Louisiana Supreme Court in *Kling I*,

asking when a suit "interrupt[s] prescription as to causes of action, understood as legal claims rather than the facts giving rise to them, not asserted in that suit?" *Id.* at 288.

The Louisiana Supreme Court answered in *Kling II*, instructing that "[p]rescription is interrupted when notice is sufficient to fully apprise the defendant of the nature of the claim of the plaintiff, and what is demanded of the defendant." 378 So. 3d at 55–56. The court explained that interruption is not so broad as to include "all causes arising out of the same operative facts identifying the same right/duty and the same violation of the legal theory pleaded irrespective of the source of the legal obligation." *Id.* at 56–57. Neither is it so narrow "such that the actions in the two suits must be the same to provide notice to a defendant." *Id.* at 57. Instead, the "essence of interruption" is "notice to the defendant of the legal proceedings based on the claim involved." *Id.* Where "two suits [are] instituted by the same obligee," and "deal[] with the same underlying obligation and present[] the same demand," a prior suit may interrupt prescription. *Id.* at 58 (citing *Thompson v. Town of Jonesboro*, 222 So. 3d 770, 774 (La. App. 1st Cir. 2017)).

To illustrate this flexible concept, the Louisiana Supreme Court "[e]xamin[ed] the spectrum of jurisprudence" on interruption. *Id.* The line of interruption cases considered the extent of the similarity between the two suits, including the parties, facts, claims asserted, the source of the defendant's obligation, and the demand made. *Id.* While none of the considerations alone appear to be determinative, the court placed particular emphasis on the source of the obligation and the demand. *See id.* at 57–59. For example, a workers' compensation tort suit for damages against an employer interrupted a later tort claim for damages against the liability insurer because the initial suit placed the insurer on notice of its legal and monetary obligations arising from the same underlying tort and facts. *Id.* at 58 (citing *Parker v. S. Am. Ins. Co.*, 590 So. 2d 55, 56 (La. 1991)). But a

plaintiff's initial mandamus suit could not interrupt his subsequent claim for damages because a suit for mandamus relief failed to "put defendant on notice of a possible claim for monetary damages." *Id.* at 59 (citing *Thompson*, 222 So. 3d at 774).

A comparison of Stanley's state court petitions and his federal complaint demonstrate that the petitions failed to provide adequate notice of his § 1983 claims. While there is parity between the parties, the facts, and references to the Constitution, Stanley's state court petitions merely sought an injunction to prevent discipline.[5] His § 1983 suit is in another category entirely. A creature of tort liability, § 1983 permits recovery of compensatory damages, attorney's fees, and when appropriate, even punitive damages. *See Hale v. Fish*, 899 F.2d 390, 404 (5th Cir. 1990). Stanley's state suit seeking to prevent LPD from implementing a suspension and transfer failed to provide LPD adequate notice of a potential tort suit for money damages. *See Thompson*, 222 So. 3d at 774. Because the state court petitions failed "to fully apprise the defendant of the nature of the claim of the plaintiff," and especially what would be "demanded of the defendant," interruption does not apply. *Kling II*, 378 So. 3d at 55–56.

## IV.   Conclusion

Stanley's race against the clock for a timely § 1983 claim ended no later than June 11, 2022. Because he filed suit three days later, the district

---

[5] Despite contending throughout briefing that he could *not* seek damages until he completed his administrative appeal, Stanley asserted for the first time at oral argument that his petitions *did* seek monetary damages. We discern none. And even if a singular request for "sick leave with pay in full, and . . . attorney's fees, expenses, and costs" in connection with an injunction could qualify as such, it is not a demand for damages of the sort available under § 1983.

No. 24-30119

court correctly dismissed the complaint as prescribed on its face. Accordingly, we AFFIRM.